1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALFONSO RIOS-AYON,

Defendant.

No.  1:16-cr-00096-NONE

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

(Doc. No. 171)

Pending before the court is defendant Alfonso Rios-Ayon's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") pandemic.  (Doc. No. 171.)  For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On July 7, 2016 defendant Alfonso Rios-Ayon was indicted, along with his codefendants on charges of conspiring to distribute and possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and distribution of 5 grams or more of actual methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine

in violation of 21 U.S.C. § 841(a)(1).  (Doc. Nos. 23.)  On March 27, 2017, defendant Rios-Ayon

entered a plea of guilty to the conspiracy charged in count one of the indictment.  (Doc. Nos. 80

at 2; 84.)  The presentence report prepared in his case summarized defendant's offense conduct,

reporting that from March 2016 to June 2016, defendant Rios-Ayon sold and intended to sell

significant quantities of methamphetamine to a confidential source.  (Doc. No. 93 (Presentence

Report) at 4–8.)  The investigation revealed that defendant had access to large quantities of

methamphetamine located in Mexico and that his role in the conspiracy was significant because

he directed and oversaw the conduct of others, including his drug couriers.  (*Id.*)  Defendant was

found to be responsible for possessing 14.47 kilograms (or about 32 pounds) of

methamphetamine.  (*Id.* at 9.)  In addition, there were upward adjustments to his offense level

applied due to the presence of loaded firearms in connection with his drug trafficking conduct, his

maintaining a premises for purposes of his drug trafficking and due to his role as an organizer,

leader, manager of supervisor of the drug conspiracy.  (*Id.* at 9–10.)  It was ultimately determined

that under the U.S. Sentencing Guidelines defendant Rios-Ayon's adjusted offense level was 41

and his criminal history placed him in category III, resulting in an advisory sentencing guideline

range calling for a term of imprisonment of between 360 months and life.  (*Id.* at 19.)  The U.S.

Probation Office recommended a sentence of 360 months.  (*Id.*)  On January 8, 2018, the

sentencing judge varied downward significantly from that advisory guideline range, sentencing

defendant to a term of imprisonment of 240 months, followed by a 360-month term of supervised

release, and the mandatory $100 special assessment.  (Doc. Nos. 133; 134 at 2–3, 6.)

Defendant Rios-Ayon is currently serving his sentence at the U.S. Bureau of Prisons'

("BOP") Victorville Medium I Federal Correctional Institution in Victorville, California ("FCI

Victorville").  *Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/

(last visited Dec. 1, 2020.)  His projected release date is July 14, 2033.  *Id.*  On October 9, 2020,

2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C.

§ 3582(c)(1)(A).  (Doc. No. 171.)  On October 23, 2020, the government filed its opposition to

the motion, and on October 30, 2020, defendant filed his reply thereto.  (Doc. Nos. 173, 179.)

/////

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)     extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 978–79 (C.D. Cal. 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

5

A. **Administrative Exhaustion**

On June 2, 2020, defendant submitted an administrative request to the Warden at FCI Victorville seeking compassionate release based on his medical conditions. (Doc. No. 171-4.) Defendant argues that because he filed the pending motion after 30 days lapsed from the date that he submitted his request to the Warden, administration exhaustion is satisfied. (Doc. No. 171 at 6.) The government has conceded that defendant has properly exhausted his administrative remedies. (Doc. No. 173 at 9.) Accordingly, and because a failure to exhaust is normally viewed as an affirmative defense which must be pled and proven, the court will accept the government's concession of proper exhaustion and will turn to the merits of the pending motion.

B. **Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

The defendant is

(I)   suffering from a serious physical or medical condition,

(II)  suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations.  *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[4]  In determining a defendant's projected release date for this purpose, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Rios-Ayon argues that extraordinary and compelling reasons warranting his compassionate release exist due to the medical conditions from which he allegedly suffers.  To qualify for compassionate release, defendant must demonstrate that he is suffering from some serious medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Victorville and "from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1

---

[4]  Because defendant Rios-Ayon is only 46 years old, (*see* Doc. No. 93 (Presentence Report) at 2), these age and age-related factors are irrelevant to the court's disposition of the pending motion.

1    (A)(ii).  More specifically, defendant argues that his type 2 diabetes, obesity, essential

2    hypertension, bronchitis, past cancer diagnosis, and other medical conditions place him at higher

3    risk for becoming severely ill if he were to contract COVID-19.  (Doc. No. 171 at 4–6.)  At the

4    time of his sentencing, it was noted that defendant Rios-Ayon had been diagnosed with testicular

5    cancer in 1996, for which he underwent treatment, and was also diagnosed with valley fever in

6    2005.  (Doc. No. 93 (Presentence Report) at 15.)  Additionally, it was documented at that time

7    that he "suffered problems with diabetes, high blood pressure, and insomnia."  (*Id.*)  Finally,

8    defendant is 6' 3" and, at the time of sentencing, weighed 185 pounds.  (*Id.* at 2.)  Defendant's

9    body mass index (BMI) was 23.1 and he was thus not overweight or obese when he was

10   sentenced in this case.  *See Adult BMI Calculator*, CENTERS FOR DISEASE CONTROL AND

11   PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_

12   calculator/ bmi_calculator.html (last visited Dec. 1, 2020).  According to defendant's BOP

13   medical records submitted in connection with his pending motion, he currently suffers from type

14   2 diabetes mellitus, obesity with a listed BMI of 31.6, essential hypertension, an unspecified

15   bacterial pneumonia, and acute bronchitis.  (Doc. No. 171-5 at 36.)  It is also noted in those

16   records, consistent with the 1996 cancer diagnosis reflected above, that defendant had a malignant

17   neoplasm of the testis which is documented as having been resolved in 1998.  (*Id.* at 37.)  Further,

18   defendant suffered from a latent tuberculosis infection (LTBI) and valley fever

19   (coccidioidomycosis)—with those conditions being resolved in 2018 and 2005, respectively.  (*Id.*

20   at 36–37.)  Since commencing his incarceration, defendant's medical conditions have remained

21   relatively unchanged except for his significant weight gain.

22          According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant is

23   in fact at higher risk for suffering a severe illness from COVID-19 due to his obesity and type 2

24   diabetes mellitus, and he may be at higher risk due to his essential hypertension.  *See Coronavirus*

25   *Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR

26   DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

27   precautions/people-at-increased-risk.html (last visited Dec. 1, 2020).  Additionally, the CDC

28   recognizes that chronic obstructive pulmonary disease, which includes chronic bronchitis, places

8

1   individuals at higher risk of becoming severely ill if the virus is contracted, while other lung

2   diseases "might" place an individual at higher risk.  *Id.*  Thus, while defendant's current diagnosis

3   of acute bronchitis and past diagnosis of valley fever may not in fact place him at greater risk of

4   severe illness, the court concludes that he does suffer from chronic lung conditions, which might

5   place him at greater risk for severe illness if he is infected by COVID-19.  Finally, at the moment,

6   the CDC states that it is "not known" whether a history of cancer places individuals at greater risk

7   for becoming severely ill from COVID-19.  *Id.*  Because defendant's testicular cancer has been

8   resolved, that condition is not at the moment recognized by the CDC as an at-risk category.

9   Nonetheless, defendant suffers from several comorbidities.  As the CDC recognizes, "[t]he more

10  underlying medical conditions someone has, the greater their risk for severe illness from COVID-

11  19."  *Id.*  Therefore, based on his medical records, it is clear that defendant Rios–Ayon is

12  seriously at risk if he were to contract COVID-19.

13          However, considering the factual record and circumstances before the court, it appears

14  that defendant's actual risk of contracting a severe illness from COVID-19 is speculative.  This is

15  in part because he tested positive for COVID-19 on July 7, 2020 after the BOP's medical staff

16  observed that his temperature was elevated.  (Doc. No. 171-5 at 14.)  At that time, defendant

17  denied that he was suffering from most other common symptoms of COVID-19, including having

18  a cough, sore throat, and shortness of breath.  (*Id.*)  For 14 days following his positive test results,

19  defendant was monitored by the BOP's medical staff.  (*Id.* at 26–27.)  Except for the day

20  immediately following his positive test result, where defendant reported having a headache and a

21  "warm" body temperature, he continued to deny having all other major symptoms of COVID-19

22  over the following 13 days, reporting no cough, shortness of breath, muscle pain, fatigue, sore

23  throat, headaches, new loss of smell and taste, or chills.[5]  (*Id.*)

24  _____

25  [5]  Based on the current medical evidence, it is unclear whether defendant's brief, but elevated, body temperature was associated with his COVID-19 diagnosis or, alternatively, caused by his

26  other medical conditions, namely pneumonia.  Additionally, to the extent that defendant argues his chest pain is the result of contracting COVID-19, the court observes that his chest pain was

27  documented well before COVID-19 first entered FCI Victorville in January 2020.  (*See* Doc. No. 171-5 at 21.)  Moreover, in July 2020, the BOP's medical staff noted that an x-ray of defendant's

28  chest revealed "partial improving pneumonia[.]"  (Doc. No. 177 at 3 (sealed).)

Defendant argues that the possibility of his re-infection with the virus weighs in favor of his compassionate release.  (Doc. No. 171 at 6.)  In this regard, many courts have "err[ed] on the side of caution to avoid potentially lethal consequences" because "the science is unclear on whether reinfection is possible."  *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding extraordinary and compelling reasons exist where a COVID-positive inmate at FCI Terminal Island, who did not develop severe symptoms, suffered from a combination of medical conditions that placed him at risk of serious complications from COVID); *see also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged. . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs.  The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of reinfection, given the high numbers of infected inmates and Defendant's own contraction of the virus.").  Other courts have taken the position that uncertainty surrounding the danger of reinfection "cuts against compassionate release," in part because it is the defendant's burden to establish that "extraordinary and compelling reasons" justifying compassionate release exist.  *See United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020).

Here, the court concludes out of an abundance of caution that because of his obesity, type 2 diabetes, essential hypertension, and potentially his lung-related ailments—combined with the risk of reinfection from COVID-19—defendant has "a serious physical . . . condition . . . from which he . . . is not expected to recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  However, to establish extraordinary and compelling reasons justifying his compassionate release, defendant Rios-Ayon must still show that his medical conditions "substantially diminish[] [his] ability . . . to provide self-care" in FCI Victorville.  *See id.*

Based on the current record before the court, defendant has not demonstrated that he is significantly hindered in providing care for himself while in prison.  It is true that FCI Victorville Medium I, where defendant is imprisoned, has suffered from a significant COVID-19 outbreak,

10

1   with 434 inmates and 21 staff being reported as having tested positive for the virus but recovered,

2   while two inmates have died at the hands of the virus.  *See COVID-19*, FEDERAL BUREAU OF

3   PRISONS, https://www.bop.gov/coronavirus/ (last visited Dec. 23, 2020).[6]  At the moment, there

4   are currently 101 inmates and 26 staff who are reported as having active cases of COVID-19.[7]

5   While it is clear that FCI Victorville is still managing to control the outbreak at that prison to

6   some extent, that alone does not tip the scales in favor of defendant's compassionate release in

7   light of all the other relevant circumstances.  More fundamentally, aside from citing the risk of

8   reinfection from COVID-19 (which is speculative), nothing in the record before this court

9   supports a contention that defendant is actually hindered in providing "self-care" at FCI

10  Victorville.  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Indeed, 12 days after his positive COVID-

11  19 test result, on July 19, 2020, defendant told BOP's medical staff: "I am fine.  I have no

12  problems as far as how I feel.  I am okay."  (Doc. No. 171-5 at 2.)  The BOP's medical staff also

13  noted during that encounter that defendant was alert and orientated.  (*Id.*)[8]  Further, before

14  COVID-19 entered FCI Victorville, it appears defendant was receiving proper medical care for

15  his health-related complaints, such as being prescribed medication, and BOP's medical staff

16  noted in January 2020 that defendant appeared "[w]ell."  (*Id.* at 22.)   Accordingly, while there is

17  still some unknown risk to defendant due to the possibility that he could be reinfected with the

18  COVID-19 virus, that inherently speculative possibility alone fails to provide a basis upon which

19  the court could conclude that defendant is "substantially diminish[d]" in his ability to "provide

20  self-care" at FCI Victorville.  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Thus, defendant Rios-

21  Ayon has failed to carry his burden of establishing his entitlement to compassionate release.  *See*

22

23  [6]  FCI Victorville Medium I has a population of only 1,033 inmates.  *FCI Victorville Medium I*,
    FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/vim/ (last visited Dec.
24  1, 2020).

25  [7]  While the undersigned does not necessarily accept these reported numbers at face value in light
    of current CDC guidelines with respect to both testing and the manner of counting "active cases,"
26  there is also no evidence before the court challenging those reported numbers in this case.

27  [8]  This is one of the most recent medical records of defendant submitted by the parties in
    connection with the pending motion.
28

11

1   *Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward

2   evidence that establishes an entitlement to a sentence reduction.").

3       Accordingly, in this case, the court does not find extraordinary and compelling reasons

4   justifying compassionate release pursuant to § 3582(c)(1)(A).

5   **C.    Consistency With the § 3553(a) Factors**

6       Finally, any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent

7   with consideration of the sentencing factors set forth in §3553(a).[9]   *Trent*, 2020 WL 1812242, at

8   *2; *see also Parker*, 461 F. Supp. 3d at 981.  Here, consideration of those sentencing factors also

9   do not support defendant Rios-Ayon's release.

10      The offense conduct in this case reflects defendant's significant role in a large-scale

11  conspiracy to distribute methamphetamine.  Between March and June of 2016, agents with the

12  Drug Enforcement Administration (DEA) used a confidential source to investigate defendant's

13  drug distribution network.  (Doc. No. 93 at 4–8.)  The confidential source arranged meeting with

14  defendant at his ranch in Pixley, California with the intent of purchasing large amounts of

15  methamphetamine on several occasions.  (*Id.* at 4–6.)  Defendant used his ranch as the location to

16  sell the methamphetamine to avoid detection by law enforcement, something that he told the

17  confidential source was important to him because he had previously been convicted for drug

18  trafficking, imprisoned and deported from this country.  (*Id.* at 5.)  The DEA's investigation

19  revealed that defendant had access to large quantities of methamphetamine (i.e., at least 60

20  pounds) nearby in the cities of McFarland, Modesto, and Madera.  (*Id.* at 5–6.)  The investigation

21

22  [9]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court

23  shall consider:  the nature and circumstances of the offense and the history and characteristics of
    the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
    respect for the law, provide just punishment for the offense, afford adequate deterrence, protect

24  the public from further crimes of the defendant and provide the defendant with needed
    educational or vocational training, medical care, or other correctional treatment in the most

25  effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
    established for the applicable category of offense committed by the applicable category of

26  defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing

27  Commission; the need to avoid unwarranted sentence disparities among defendants with similar
    records who have been found guilty of similar conduct; and the need to provide restitution to any

28  victims of the offense.

1   also revealed that other individuals worked for defendant, transporting drugs at his direction.

2   (*Id.*)  Finally, law enforcement's investigation revealed that defendant reportedly had connections

3   to significant drug distributers in Mexico and referred to them on one occasion as "Chapo's

4   people" presumably referring to individuals working for Joaquin Guzman—a former leader of the

5   Sinaloa Cartel.[10]  (*Id.* at 6.)  The investigation concluded when the confidential source facilitated

6   the purchase of 30 pounds of methamphetamine from defendant at his ranch on June 29, 2016.

7   (*Id.*)  After the confidential source saw the quantity of methamphetamine and left the property to

8   "retrieve the money," law enforcement executed a search warrant of the ranch and defendant

9   attempted to flee on foot but was found hiding underneath a trailer on the property.  (*Id.* at 7.)  A

10   search of the property yielded 14.7 kilograms (or about 32 pounds) of methamphetamine, two

11   semi-automatic pistols, a shotgun, over $16,000 in cash, and 1.7 pounds of marijuana.  (*Id.* at 7–

12   8.)

13        In short, defendant Rios-Ayon was a major drug trafficker.  His criminal conduct was

14   undoubtedly significant and serious.  As noted at the outset, the advisory sentencing guideline

15   range in his called for a sentence of between 30 years to life imprisonment, with the U.S.

16   Probation Office recommending a sentence of 30 years while recognizing the mitigating factors

17   of defendant's medical history and his limited education . (*Id.* at 19–20.)  Instead, the sentencing

18   court departed/varied downward significantly from the guidelines in imposing a 240-month

19   prison sentence.  (*Id.*)  The undersigned concludes that sentence to have been appropriate under

20   the facts in this case.

21        To date, defendant has served approximately 54 months in prison, or approximately

22   26.5% of his total sentence accounting for good time credits.  (Doc. No. 173-1 at 4.)  Although

23   defendant's rehabilitation since beginning his prison sentence is noteworthy, (*see* Doc. No. 171 at

24   12), that is not enough to overcome the circumstances (including the offense of conviction)

25   weighing against his release at this time.  In the undersigned's view, a 54-month sentence (and a

26

27

28

---

[10] "Following a three-month trial, a jury found defendant [Joaquin Guzman] guilty of 10 counts related to his widespread drug trafficking activity as a leader of the Sinaloa Cartel." *United States v. Guzman Loera*, No. 09-cr-0466 (BMC), 2019 WL 2869081, at *1 (E.D.N.Y. July 3, 2019) (referring to the defendant as "El Chapo"), *appeal docketed*, No. 19-2239 (2d Cir. July 22, 2019).

1    186-month reduction of the sentence imposed) would not reflect the seriousness of defendant's

2    offense of conviction, promote respect for the law, provide just punishment, or afford adequate

3    deterrence to criminal conduct.  *See* § 3553(a); *see also United States v. Purry*, No. 2:14-cr-

4    00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*,

5    No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of

6    the sentence remaining is an additional factor to consider in any compassionate release analysis,

7    with a longer remaining sentence weighing against granting any such motion." (citation omitted)).

8    Because the court concludes that granting defendant Rios-Ayon compassionate release at this

9    time would be inconsistent with appropriate consideration of the § 3553(a) sentencing factors, his

10   motion will be denied on this basis as well.

11                                         **CONCLUSION**

12          For the reasons explained above, the court concludes that defendant has not demonstrated

13   that "extraordinary and compelling reasons" exist warranting his compassionate release from

14   prison.  Moreover, the court finds that the granting of release at this time is not consistent with

15   consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).  Accordingly, defendant's

16   motion for compassionate release (Doc. No. 171) is denied.

17   IT IS SO ORDERED.

18       Dated:   __December 23, 2020__          _____

19                                               UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28